CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 19 2010

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

IN RE:                                    )
GREGORY WILLIAMS                          )
JOYCE WILLIAMS                            )
    Debtors                               )
_____ )
                                          )
GREGORY S. WILLIAMS, SR.                  )
JOYCE I. WILLIAMS                         )     Civil Action No. 5:10CV00049
    Appellants,                           )
                                          )
v.                                        )     **MEMORANDUM OPINION**
                                          )
W. CLARKSON MCDOW, JR.                    )     By: Hon. Glen E. Conrad
UNITED STATES TRUSTEE FOR                 )     Chief United States District Judge
REGION 4                                  )
    Appellee.                             )

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

This case is presently before the court on an appeal from an order of the United States Bankruptcy Court for the Western District of Virginia dated March 3, 2010. The appellants seek review of the bankruptcy court's order dismissing the appellants' bankruptcy filing as presumptively abusive pursuant to 11 U.S.C. § 707(b)(2). Because the court concludes that the bankruptcy court did not commit reversible error in determining the appellants' Form 22A line item amounts, the order will be affirmed.

## I.    Statutory Framework

This case arises under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). As its name suggests, BAPCPA is intended to "ensure that the system is fair for both debtors and creditors," and to "ensure that debtors repay creditors the maximum they can afford." H.R. REP. NO. 109-31, pt. 1, at 2 (2005) reprinted in 2005 U.S.C.C.A.N. 88. Modifying §

707(b) of the Bankruptcy Code to provide for dismissal of a Chapter 7 petition based on mere "abuse" of the Chapter 7 proceeding rather than "substantial abuse," BAPCPA also removes former § 707(b)'s presumption in favor of granting relief to debtors whose petitions are challenged as abusive. In re Reed, 422 B.R. 214, 220-21 (C.D. Cal. 2009).

Instead, BAPCPA sets forth a process by which a Chapter 7 petition may be found presumptively abusive and either dismissed or converted to a case under Chapter 13. First, the court must compare the debtors' annualized CMI to the applicable state median income. If the debtors' annual income is lower than the state median income, abuse is not presumed. 11 U.S.C. § 707(b)(7). If it is higher than the state median income, the debtors must calculate their monthly disposable income via a formula set out in § 707(b)(2), colloquially known as a "means test." The means test is intended to "distinguish between debtors who can repay a portion of their debts and debtors who cannot." In re Ross-Tousey, 549 F.3d 1148, 1151 (7th Cir. 2008). To do so, the formula subtracts certain necessary expenses from the debtor's monthly income, such as the cost of housing, utilities, taxes, and health insurance. See 11 U.S.C. 707(b)(2)(A). A debtor in a Chapter 7 case uses Fed. R. Bankr. Official Form 22A in order to make the means test calculations mandated by § 707(b)(2)(A).

Based on the means test, the debtors' monthly disposable income is computed. This number is then compared to statutory benchmarks in order to determine whether the debtors' petition is presumptively abusive. Under the version of the statute in force at the time of the appellants' filing, abuse is not presumed if the debtors had a disposable monthly income of $109.58 or less; abuse is presumed, however, if they had at least $182.50 left over per month. 11 U.S.C. § 707(b)(2)(A)(I)

(2008).[1] If the debtors' disposable monthly income falls between these two benchmarks, the case is presumed abusive if the debtors' disposable income is enough to pay at least twenty-five percent of the debtors' nonpriority unsecured debt over a sixty-month period. Id.

Once the presumption of abuse has been established, the debtors may rebut it only by showing "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces" that reduce the debtors' disposable income below the specified benchmarks. 11 U.S.C. § 707(b)(2)(B). If the presumption of abuse does not arise or has been rebutted under § 707(b)(2)(B), a chapter 7 petition may still be dismissed if the totality of the circumstances demonstrate that the debtors' petition is abusive. 11 U.S.C. § 707(b)(3)(B).

## II.    <u>Factual Background</u>

The facts underlying this appeal are not in dispute. On August 1, 2008, Gregory and Joyce Williams (the "Williamses" or the "appellants") filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Western District of Virginia. With their petition, the appellants included the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Form 22A"). On this form, they claimed a current monthly income ("CMI") of $7,127.24 and monthly expenses of $7,738.25, generating a negative net monthly income of $611.01. The appellants also indicated that they owed $30,640 in unsecured debt.

Because the appellants had claimed an annual household income of $85,526—131% of the median income in Virginia for a family of two—the United States Trustee (the "UST") analyzed their filings to determine whether their case should be dismissed under 11 U.S.C. §

---

[1] Subsequent versions of the statute have increased these numbers to $117.08 and $195.41, respectively. 11 U.S.C. § 707(b)(2)(A)(I) (2010).

707(b)(2). After conducting his review, the UST challenged several of the figures on the appellants' Form 22A, eventually increasing the appellants' monthly income to $7601.45, and making several adjustments to their claimed monthly expenses, including the following: reducing their telecommunications expenses, eliminating an allowance for the care of the appellants' adult daughter, disallowing their $162.08 IRA contribution and adding it back into their gross income, and increasing their health insurance expense from $469 to $508.92. Based on these revisions, the UST concluded that the appellants had a monthly disposable income of $174.82. Because this net monthly income was enough to repay more than 25% of the appellants' unsecured debts over a sixty-month period, see 11 U.S.C. 707(b)(2)(A)(i)(I), the UST filed a motion on October 22, 2008, to dismiss the case as abusive.

At the hearing on the UST's motion, held on August 26, 2009, the bankruptcy court heard evidence regarding the appellants' general financial situation, including several matters relevant to this appeal. First, the UST elicited testimony from Mr. Williams that the personal property tax bill filed on his behalf had mistakenly listed at least one vehicle that Mr. Williams claimed he did not own. (Trial Tr. at 20.) Mr. Williams also claimed that he did not know whether he had paid the tax bill as received into evidence. Id. at 21. The appellants offered no further evidence during their case in chief regarding the additional vehicles listed on the personal property tax bill. Second, the appellants argued that if their IRA contributions were to be treated as part of their gross income for purposes of calculating their CMI, then the court should increase the appellants' income tax expenses accordingly. (Trial Tr. at 71.) This line of argument was explored by counsel for the appellants only during the cross-examination of a witness who had testified for the UST. Id. During her cross-examination, the appellants' counsel suggested that the applicable

4

tax rate would be twenty-four percent, but did not explain why her calculation was accurate. Nor did the appellants offer any evidence regarding this calculation in their case in chief. Third, the parties did not dispute that the health insurance expense on the appellants' Form 22A should have been increased from $469 to $508.92. See Trial Tr. at 61 (witness for the UST testifying that she increased the health insurance expense and that "on [the appellants'] means test, they understated [this expense].").

The parties agreed not to make closing arguments at the hearing. Instead, the parties submitted post-hearing briefs to the bankruptcy court. In their brief in opposition, the appellants did not mention or pursue their arguments regarding the IRA contributions. The appellants argued for the first time that their monthly personal property tax expense was actually $49.59. Attached to the appellants' brief was a revised Form 22A, executed by the Williamses on November 4, 2009, and showing their CMI as $7,601.45, their personal property tax as $49.59 per month, and their health insurance costs as a $508.92 monthly expense.

On March 3, 2010, the bankruptcy court dismissed appellant's filing as presumptively abusive. In re Williams, 424 B.R. 207, 216 (Bankr. W.D. Va. 2010). In support of its decision, the court found that several of the appellants' Form 22A calculations needed to be revised. Relevant to this appeal, the court eliminated the appellants' personal property tax expense, did not subtract any income tax from the IRA contributions that were added back into the appellants' gross income, and did not adjust the appellants' health insurance costs from $469 to $508.92. The court's calculations left the appellants with $197.07 in monthly disposable income, triggering the presumption of abuse under 11 U.S.C. § 707(b)(2)(A). Id. at 216. The case was accordingly dismissed.

On May 10, 2010, the appellants filed their appeal with this court.

## III.  **Standard of Review**

The bankruptcy court's findings of fact are reviewed for clear error. In re Merry-Go-Round Enterprises, 180 F.3d 149, 154 (4th Cir. 1999); Bankruptcy Rule 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). "Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Farouki v. Emirates Bank Int'l Ltd., 14 F.3d 244, 250 (4th Cir.1994). Conclusions of law are reviewed de novo. In re Harford Sands Inc., 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir. 1996).

## IV.  **Discussion**

### A.  Burden of Proof

Generally, the party who is asserting that a debtor's case is abusive holds the burden of proof. In re Witek, 383 B.R. 323, 326 (Bankr. N.D. Ohio 2007) ("In either [an action under § 707(b)(2) or an action under § 707(b)(3)], the party bringing the action for dismissal carries the burden of proof."). BAPCPA expressly provides that the burden of persuasion shifts to the debtor after a presumption of abuse has been established under § 707(b), when the debtor must demonstrate "special circumstances" to rebut the presumption. 11 U.S.C. § 707(b)(2)(B). Thus, it appears that the UST bears the burden of proof in establishing a prima facie case in support of

application of the presumption under § 707(b)(2). Given that the presumption is applied only after the debtor fails the means test, it follows that the UST holds the burden of establishing a prima facie case that the debtors' disposable monthly income exceeds the relevant statutory benchmarks.

While it is therefore fairly clear that the UST has the overall burden to prove by a preponderance of the evidence that the debtors fail the means test, the question of which party must prove the accuracy of particular line item calculations entered on Form 22A is not as obvious. As a general matter, BAPCPA clearly places a much heavier onus than did former § 707(b) upon debtors whose petitions are challenged as abusive. See In re Goble, 401 B.R. 261, 268 (Bankr. S.D. Ohio 2009) (noting that the previous statute's presumption in favor of the debtor has been "flipped . . . with the enactment of BAPCPA," particularly for above-median-income debtors). The statute also specifically requires that,

> As part of the schedule of current income and expenditures required under [11 U.S.C. § 521], the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(I), that show how each such amount is calculated.

11 U.S.C. § 707(b)(2)(C).

In light of this statutory framework, one court has held that, at least with regards to claimed expenses that are debtor-specific, the debtors have the burden of proving that the amounts entered on Form 22A are accurate. In re Meade, 420 B.R. 291, 303 (Bankr. W.D. Va. 2009) (Stone, J.) (noting that "there seems to be little case authority on the issue of burden of proof on a post-BAPCPA motion to dismiss for abuse pursuant to §§ 701(b)(2) or (b)(3)" and holding that the debtor holds the burden of proof as to the expenses entered on Lines 25 through

44 of Form 22A). As the <u>Meade</u> court noted, not only is the relevant information much more readily available to the debtors than to any other party, but the line-item expenses also operate somewhat like "affirmative defenses to a motion to dismiss rather than elements of the presumption itself." <u>Id</u>. At the very least, it indeed appears that the operation of § 707(b) unavoidably places some burden of production upon certain debtors, given that, if above-median-income debtors failed to enter any expenses whatsoever on Form 22A, the UST would necessarily succeed in proving the presumption of abuse.

Regardless of whether the debtors have an initial burden of persuasion with relation to the line item expenses of Form 22A, it is evident that, at minimum, the UST's establishment of a prima facie case of presumptive abuse is enough to shift to the debtor the burden of going forward with evidence to controvert the prima facie case. <u>See</u> <u>In re Perelman</u>, 419 B.R. 168, 177 (Bankr. E.D. N.Y. 2009) ("Once a prima facie case [under § 707(b)(3)] is established by the UST, the burden of going forward with sufficient evidence to controvert the prima facie case is reposed in the non-moving party, the Debtor."). Thus, where the UST has produced evidence in support of its Form 22A line item calculations, and where the UST's calculations result in the debtor failing the means test, the burden of going forward shifts to the debtor to demonstrate that the particular line item expenses computed by the UST are in error. <u>See</u> <u>In re Robrock</u>, 430 B.R. 197, 209 (Bankr. D. Minn. 2010) (adopting the UST's figures in a dispute over the line item expense for taxes where "the Debtor produced no evidence at all to contradict the assumptions imposed by [the UST] on his inferences from all the documentation that the Debtor had provided to the U.S. Trustee."); <u>Witek</u>, 383 B.R. at 329 (adopting the UST's calculation of the debtor's CMI where the debtor had raised no evidence in support of his own proposed CMI calculation).

8

This approach is consistent with the parties' evidentiary burdens with respect to other types of presumptions that arise in bankruptcy cases. The Seventh Circuit, for example, has held that, while the burden of proof lies with the party asserting a preference, that party's production of certain evidence "was sufficient to establish a prima facie case for the trustee. At that point, the burden shifted to [the debtor] to demonstrate that the trustee's figures were wrong." Matter of Prescott, 805 F.2d 719, 727 (7th Cir. 1986) (holding that the bankruptcy court's findings against the debtor were not clearly erroneous where the debtor presented no rebuttal evidence on this issue). See also In re Crump, 42 B.R. 636, 638 (Bankr. Mo. 1984) ("While Debtors may have the overall burden of persuasion in proving the elements of their preference action, in this instance, Defendant has the burden of going forward with evidence on the value of the property in question and on whether its claim is actually fully secured. Debtors have established a prima facie case on their preference action and Defendant now has the burden of presenting evidence to negate their case.").

The same principle applies in turnover actions under the Bankruptcy Code:

> The trustee must bring the action to claim property for the bankruptcy estate, and she bears the burden of establishing a prima facie case for turnover. Once a prima facie case is established, the debtor must provide a reason for going forward with the case, but the ultimate burden of persuasion remains with the trustee at all times. . . . [This] approach gives every debtor the opportunity to challenge the trustee's proposed assessment of the estate's interest. The weaker the trustee's case, the easier it will be for the debtor to upset it.

In re Meyers, --- F.3d ----, 2010 WL 2990826 at *4 (7th Cir. 2010) (citations omitted). See also Evans v. Robbins, 897 F.2d 966, 969 (8th Cir. 1990) ("[T]he burden of proof in a turnover proceeding is at all times on the receiver or trustee; he must at least establish a prima facie case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate

burden or risk of persuasion is upon the receiver or trustee."); In re Writing Sales Ltd. Partnership, 96 B.R. 175, 177 (Bankr. E.D. Wis.1989) ("The Code presumes a debtor to be insolvent during the preference period. This presumption requires [the debtor] to present evidence to rebut the presumption, but it does not relieve [the party asserting the preference] of its burden of proof."). Compare Farouki, 14 F.3d at 249 n. 16 ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets.") (citing In re Reed, 700 F.2d 986, 992-93 (5th Cir.1983)).

In this case, therefore, the court concludes that the burden of persuasion remains upon the UST to prove that the debtors' disposable monthly income exceeds the relevant statutory benchmarks. But, where the UST has produced sufficient evidence in support of its Form 22A line item calculations, and where the UST's proposed figures result in a prima facie conclusion that the debtors' disposable monthly income exceeds the statutory benchmarks, the burden of going forward shifts to the debtors to controvert the accuracy of the UST's calculations.

B.     Challenged Evidentiary Findings

Against this background, the court turns to the specific allegations of the appellants. The appellants challenge only three of the Form 22A calculations upon which the bankruptcy court based its decision: the disallowance of a personal property tax expense, the non-deduction of income tax from the IRA contributions, and the use of the appellant's initially-submitted health insurance expense calculations rather than the figures as corrected by the UST.

As an initial matter, the magic number in this case is not in dispute. The appellants have conceded that their Chapter 7 petition is presumptively abusive under § 707(b) if they have a monthly disposable income of at least $127.67, because this sum would enable them to pay twenty-five percent of their unsecured debt over a sixty month period. The bankruptcy judge ascribed to the appellants a monthly disposable income of $197.07. Williams, 424 B.R. at 216. Thus, the appellants will succeed in this appeal only if they demonstrate that the bankruptcy judge made errors in his analysis that will result in a reduction of $69.41 from the appellants' monthly disposable income.

1.      Disallowed IRA Contributions

The appellants first take issue with the bankruptcy court's decision to add their $162.08 per month IRA contributions back into their gross income without making a proportional deduction for the additional income taxes which would have been payable had the IRA contributions not been made. The court concludes, however, that this issue was not properly preserved for appeal.

Because a district court "functions as an appellate court when reviewing a bankruptcy court's decision," see In re Waugh, 260 B.R. 806, 809 (N.D. Tex. 2001), a district court in these circumstances applies the same legal standards that govern appellate review in a court of appeals. See In re Rountree, 478 F.3d 215, 219 (4th Cir. 2007); In re Meyer, 197 B.R. 277, 280 (N.D. Ill. 1996) (citing Seventh Circuit precedent to hold that the appellant had waived the arguments that had been raised in his post-hearing brief to the bankruptcy court by not re-asserting them in his brief to the district court on appeal), aff'd 120 F.3d 66 (7th Cir. 1997). See also In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) (noting "the general requirement that in order to be resolved at

the appellate level an issue must first be raised in the Bankruptcy Court"). "Absent exceptional circumstances, of course, [appellate courts] do not consider issues raised for the first time on appeal." Volvo Const. Equipment North America, Inc. v. CLM Equipment, 386 F.3d 581, 603 (4th Cir. 2004). This rule serves the principle that appellate courts "should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time. Parties must be encouraged to 'give it everything they've got' at the trial level." Tele-Communications, Inc. v. C.I.R., 104 F.3d 1229, 1234 (10th Cir. 1997).

It is well established that "fleeting references" do not preserve questions on appeal. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), cert. denied, 475 U.S. 1088 (1986). See also McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review."); Monarch Life Ins. Co. v. Elam, 918 F.2d 201, 203 (D.C. Cir. 1990) ( "[V]ague, arguable references to the point in the district court proceedings do not, of course, preserve the issue on appeal."); Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners, 921 F.2d 122, 124-25 (7th Cir. 1990) ("Arguments raised in the District Court in a 'perfunctory and underdeveloped . . . manner' are waived on appeal.") (citation omitted). Consequently, "where an issue is raised but not pursued in the trial court, it cannot be the basis for the appeal." Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 722 (10th Cir. 1993). See also Tele-Communications, Inc., 104 F.3d at 1233-34 (holding that the appellant had not preserved an issue for appeal where she had raised it only in a single paragraph in her brief to the trial court); Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 734 (10th Cir. 1987) (holding that an argument that could be inferred from a trial exhibit,

but was not otherwise discussed, could not be argued on appeal).

In this case, the appellants' lone reference to this issue occurred during their cross-examination of the witness for the trustee, when counsel for the appellants suggested that the appellants should be credited with an additional income tax expense in proportion to the disallowed IRA contributions. After this exchange, the debtors failed to provide any follow-up on this contention. They offered no evidence during their case-in-chief that even related to this line of argument, much less supported their counsel's assumptions that the appellants were entitled to an increased tax expense or that the appropriate tax rate was twenty-four percent. Similarly, they failed to make any reference to this issue whatsoever in their post-hearing brief to the bankruptcy court. Thus, at no time in the proceedings before the bankruptcy court did the appellants quantify their assertions or propose to the court that the appellants' monthly tax expenses be increased by a particular sum.

After having failed to raise their argument in the proceedings below or to bring it to the notice of the bankruptcy judge, the appellants now seek to assert it before this court. This effort directly opposes the principle that "secondary, back-up theories" may not be mounted in the appellate forum for the first time. Tele-Communications, Inc., 104 F.3d at 1234. The appellants have not at any stage in this litigation cited any legal authority supporting any of their contentions relating to the disallowed IRA contributions. "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." United States v. Wantuch, 525 F.3d 505, 516 n. 5 (7th Cir. 2008) (finding that the appellant's argument was waived). Accordingly, the court concludes that this issue was not properly preserved for appeal. See Liberty Corp. v. NCNB Nat. Bank of South Carolina, 984 F.2d 1383,

1390 (4th Cir. 1993) (holding that an issue was waived where the appellant had raised it before the trial court only in a "passing reference").

## 2. Personal Property Tax Expense

The appellants also argue that the bankruptcy judge erred in declining to credit their Form 22A with any amount for personal property taxes. As explained above, the burden of persuasion remained with the UST in order to prove that the appellants failed the means test. However, if the UST established a prima facie case that the appellants had failed the means test, then the burden of going forward shifted to the debtor to rebut the UST's revised figures.

Here, the UST clearly established a prima facie case that the appellants had a monthly disposable income in excess of the relevant statutory benchmarks. The UST based his revisions of the appellants' Form 22A calculations upon his review of the appellants' pay stubs, bills, and schedules submitted with their bankruptcy petition. With regard to the personal property tax figures, the UST elicited testimony at the hearing that negated the validity of the figures claimed by the appellants as their personal property tax expenses. The appellants had originally claimed an $86.00 per month personal property tax expense,[2] and had submitted as exhibits for the hearing two personal property tax bills from 2008: one for $595.11, and the other for $142.59. The bills were from different jurisdictions, but listed exactly the same vehicles. On direct, however, Mr. Williams claimed that the tax bills incorrectly listed at least one vehicle that he did not own. (Trial Tr. at 21.) When asked if he had paid the bill which was filed with the court, he answered, "I don't know. I don't think so." Id. Accordingly, the UST argued in his post-hearing

---

[2]Given the fact that the personal property tax bills offered as Debtors' Ex. H. do not appear on their face to support such a sum, it is not clear from the record how this number was calculated.

brief that the appellants' personal property expense should be reduced to zero, based on the testimony of Mr. Williams.

After the UST had placed the veracity of the appellants' claimed personal property taxes in doubt and thereby established a prima face case that the appellants had failed the means test, the appellants failed to provide any further evidence regarding this issue at the hearing. In their post-hearing brief to the bankruptcy court, the appellants stated simply that "the debtors [sic] 2008 personal property tax amounted to $595.11 for an average monthly tax of $49.95." (Debtors' Br. at 3). Although the appellants did not specify the source of their calculations, it appears that they simply divided the larger of the two 2008 tax bills by twelve to obtain a monthly sum.[3] Apparently, therefore, the appellants sought to rely upon a bill that Mr. Williams himself had discredited. The appellants did not attempt to offer any information regarding the vehicle for which Mr. Williams denied tax responsibility, or the circumstances under which the taxes for that vehicle were paid. More to the point, appellants provided absolutely no documentation as to the amount of personal property taxes that they had actually paid. It is therefore plain that the appellants failed to provide any meaningful evidence to counter the UST's negation of their claimed personal property tax expense.

Under these circumstances, it was not clearly erroneous for the bankruptcy court to disallow the appellants' claimed personal property tax expense from their Form 22A. The bankruptcy judge was confronted with the choice between the UST's proposed elimination of the personal property tax expense and the debtors' proposed figures—which were impugned by Mr. Williams' admissions at the hearing, and which were unsupported by any further evidence or

---

[3]There is no indication of the debtors' rationale for eliminating the smaller tax bill.

explanation. Obviously, it was not incumbent upon the bankruptcy judge to comb through the debtors' filings and recalculate their expenses for them. See 11 U.S.C. § 707(b)(2)(C) (requiring debtors to provide statements of the calculations required to determine presumptive abuse "that show how each such amount is calculated"); United States v. Frazier, 394 F.2d 258, 262 (4th Cir. 1968) (stating that it is not "incumbent upon the trial judge to rummage through the file on behalf of the defendant."). See also Wheatley v. Wicomico County, 390 F.3d 328, 335 (4th Cir. 2004) ("Lawyers have a duty not just to submit evidence, but to provide some focus to their argument."); Federal Deposit Ins. Corp. v. La Rambla Shopping Center, Inc., 791 F.2d 215, 223 (1st Cir. 1986) ("[D]espite our uncertainty about the FDIC's calculations, we conclude that La Rambla did not adequately call the district court's attention to this problem. It simply presented that court with a set of alternative calculations without any relevant explanation about why they differed from the FDIC's apparently comparable calculations. We do not see how the trial judge could be expected to uncover the problems underlying the FDIC's calculations on his own.").

Accordingly, in light of the "due regard" owed to the bankruptcy court's determination of the credibility of the witnesses, see Farouki, 14 F.3d at 250, the court concludes that it was not clearly erroneous for the bankruptcy court to credit the UST's proposed revisions over the figures urged by the appellants. See, e.g., Robrock, 430 B.R. at 209 (adopting the UST's figures in a dispute over the line item expense for taxes where "the Debtor produced no evidence at all to contradict" the UST's figures); Witek, 383 B.R. at 329 (adopting the UST's calculation of the debtor's CMI where the debtor had raised no evidence in support of his own proposed CMI calculation).

3. Health Insurance Expense

Finally, the appellants argue that the bankruptcy court committed clear error in failing to upwardly revise their Form 22A health insurance expense to reflect the UST's proposed figure of $508.92. The parties did not formally stipulate to the UST's calculation, nor did the appellants submit a revised Form 22A at any time before November 2009—three months after the hearing. Still, it is clear that both parties agreed by the time of the hearing that the correct health insurance expense was $508.92 per month. The bankruptcy court, however, used in its calculations the figure that was submitted on the appellants' initial Form 22A: a line item amount of $469. Williams, 424 B.R. at 215. The court gave no reason for its departure from the figure that was agreed upon by the parties, giving rise to the appellants' claim of error. But see In re Reed, 422 B.R. 214, 227-28 (C.D. Cal. 2009) ("The bankruptcy court ruled on the basis of the evidence that had been submitted prior to the hearing; it declined to consider the new means test to which the parties had agreed, but which had not yet been filed. . . . The bankruptcy court's decision not to consider the unfiled means test is essentially an evidentiary ruling. Such rulings are reviewed for abuse of discretion."). See also Hawkins v. Landmark Finance Co., 727 F.2d 324, 327 (4th Cir. 1984) ("It is, of course, true that despite notice of the mistake on the part of the debtors, [the creditor] made no effort to correct it. But we are aware of no duty on the part of [the creditor] to speak. It had the right to rely on the debtors, who were represented by counsel, to assert their own rights.").

It is not necessary to reach the issue of whether the court erred in this instance, however. As noted above, the presumption of abuse will continue to apply to the appellants unless they show that any errors committed by the bankruptcy court would result in at least a $69.41

17

reduction of their monthly disposable income. Even if the bankruptcy court erred in failing to use the revised figure in its calculations, this error would reduce the appellants' $197.07 disposable income by only $39.92, leaving them with a monthly disposable income of $157.15. Thus, any error committed by the bankruptcy court with relation to this expense is harmless, as the appellants' petition remains presumptively abusive under § 707(b)(2)(a)(i)(I) notwithstanding the error. There is, therefore, no need to address the appellants' arguments relating to their claimed health insurance expense.

## V. Conclusion

For the foregoing reasons, the court concludes that the bankruptcy court did not commit reversible error in its determination of the line item expenses at issue in this appeal. Accordingly, the decision of the bankruptcy court will be affirmed.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 19th day of August, 2010.

_____
Chief United States District Judge